### MILLER and Others *v.* BLACKBURN.

Under the statute of frauds of 1831, a declared trust in respect to lands, could not be set up by parol against an absolute deed importing a valuable consideration on its face; for such trust was inoperative, unless expressed in writing.

*Aliter*, with implied or resulting trusts.

Where a legacy in the hands of the guardian of a married woman was used by him to purchase land, and the deed was made to her husband, with the parol understanding and agreement that the land was purchased for the wife, it was *held*, HANNA, J., dissenting, that the purchase-money was not the separate property of the wife, and that there was, consequently, no resulting trust in her favor.

*Resor* v. *Resor*, 9 Ind. R. 347, distinguished from this case.

The investment of the wife's legacy in real estate, taking the deed in the husband's name, and his subsequent disposition of the same estate by will, operated as a reduction to the husband's possession of money to which he was entitled in right of his right of his wife. HANNA, J., dissented.

APPEAL from the *Montgomery* Circuit Court.

DAVISON, J.—The appellee was the plaintiff below, and the appellants, who are the heirs at law of one *Robert Miller*, were the defendants.

The complaint, the object of which is to quiet the title to a tract of land in *Montgomery* county, alleges that on the 17th of *May*, 1855, *Isaac Castor* and his wife, *Amy Castor*, formerly *Amy Miller*, by deed in fee, conveyed all the title of *Amy Castor*, and of her husband, *Isaac Castor*,

in and to the lands described, &c., to the plaintiff; and that *Robert Miller*, the former husband of the said *Amy*, while her husband, purchased, with her separate property, the land in question, but took a deed therefor in his own name, and held it in trust for her. It is averred that prior to his, *Miller's*, death, which occurred in *October*, 1838, he executed a will, whereby he devised the land so purchased, to said *Amy*, his then wife, during her natural life, which will was, after his death, viz., on the 20th of *November*, 1838, admitted to probate; and that *Amy* afterwards intermarried with *Isaac Castor*, who, with his wife, took possession of the land, and conveyed it in fee simple to the plaintiff. It is further alleged, that *Robert Miller* died without issue, and that the defendants are his heirs, &c. The relief prayed is, that the title of the plaintiff derived from *Castor* and wife be quieted, &c.

Defendants answered—

1. By a general denial.

2. That the land in contest was not purchased with the separate property of *Amy Miller*.

3. That said land was not held in trust for her, &c., but was held by *Robert Miller* in fee simple; that he was so seized at his death; and that the same descended to the defendants as his heirs at law, &c.

There was a reply in denial of the answer, &c.

The issues were submitted to the Court, who found generally for the plaintiff, and specially as to the facts upon which its general finding was based. The defendants moved for a new trial; but their motion was overruled. Judgment for the plaintiff was accordingly rendered.

The facts, so far as they relate to questions presented for our consideration, are these: On the 10th of *April*, 1835, one *William Blackburn*, the father of *Amy Miller*, then the wife of *Robert Miller*, purchased the land in dispute of one *Peter Binford*, and paid for it with money then in his, *Blackburn's*, hands as her guardian. The money thus used had been bequeathed to her by her grandfather. At the time of the purchase, *Miller* was present, when

*Blackburn* distinctly stated that he was purchasing the land for *Amy Miller*, and with her money. *Binford*, the vendor, at the instance of *Blackburn*, executed the deed to *Robert Miller*, who with his wife, *Amy Miller*, took possession of the land, and continued in such possession until his death.

As stated in the complaint, *Robert Miller* devised the land to *Amy Miller* during her life. He died without issue, and the defendants are his heirs, &c. After this, *Amy Miller* intermarried with *Isaac Castor*, who, with his wife, conveyed the land in fee simple to the plaintiff. The Court, in its special finding, say that at the time the land was purchased and paid for, it was understood and agreed between *William Blackburn*, *Robert Miller*, and *Amy Miller*, that the same was for her use and benefit; that *Robert Miller* entered into possession in pursuance of said understanding and agreement, and held said land in trust for his wife, *Amy Miller;* and that the trust thus declared was by parol and not in writing, but it was made during the negotiation for the purchase, and constituted the terms upon which the money was invested.

There is a bill of exceptions, whereby it appears that when, during the trial, the plaintiff offered to prove by parol the understanding and agreement of *Miller* that the land was held by him in trust for his wife, the defendants objected, but their objection was overruled, and the parol evidence was admitted.

The statutory rule is, that "all declarations or creations of trust or confidence in any lands," &c., "shall be manifested and proved by some writing signed by the party who, by law, may be enabled to declare such trust or confidence," &c., "or else the same shall be utterly void and of none effect; *provided*, that when any conveyance shall be made of any lands," &c., "by which a trust or confidence may arise or result by implication or construction of law," &c., "such trust," &c., "shall be of like force and effect as the same would have been if this act had never been passed." R. S. 1831, pp. 269, 270. Thus, it will be seen that, in this case, there is no declared trust, because

the deed to *Robert Miller* is in terms, absolute, and upon its face imports a valuable consideration; hence, it was not competent for the plaintiff to set up by parol a declared trust, because such trust is inoperative unless it be in writing. But the statute to which we have referred settles the rule that a resulting or an implied trust need not be in writing. It may be proved by parol, even against the face of the deed or the answer of the trustee. And the inquiry at once arises—Is the present a case of resulting trust?

It has been decided that a trust results by operation of law, "when the estate is purchased in the name of one person, and the consideration comes from another; for instance, if *A.* furnishes money to *B.*, with a view to the purchase of an estate, and *B.* makes the purchase with the money so furnished, and takes the deed in his own name, a trust results to *A.*, because he furnished the money." *Lloyd* v. *Spillet*, 2 Atk. 150.—4 Kent's Comm. 306.—*Botsford* v. *Burr*, 2 Johns. Ch. 406.—*Irwin* v. *Ivers*, 7 Ind. R. 308.

Unless, then, the money invested in the land, at the time it was so invested, belonged to *Amy Miller*, as her separate property, it cannot be assumed that she furnished the consideration upon which the purchase was made. True, the money invested being a chose in action, could not become the absolute property of her husband until he reduced it to possession. Still the wife could, in point of law, have no control over it, and consequently no right to make any agreement respecting it. Her mere right to the money, in case she survived her husband, he having failed to reduce it to possession, would not authorize the conclusion that it was her separate property. Indeed, in a recent well considered case, it has been expressly decided that the interest of the husband in a legacy bequeathed to his wife, before he reduced it to possession, was fixed, certain, and vested, and it was not her separate property. *Westervelt* v. *Gregg*, 2 Kern. 202, and cases there cited.

We are referred to *Resor* v. *Resor*, 9 Ind. R. 347. There, the wife having an estate in land, at the instance of her

Nov. Term, 1859.

MILLER
v.
BLACKBURN.

husband sold it, and placed the proceeds of the sale in his hands for the purchase of a certain forty-acre tract of land, on the express condition that that tract when purchased should be conveyed to her and her son, it being her intention to reserve the fund for the benefit of her son. With the money so placed in his hands, he bought the land and took the title in his own name, which he held until his death. In view of these facts, it was held that the agreement between the husband and wife was valid in equity, and that there was a resulting trust created in the land in her favor.

The case thus cited is not, in our opinion, applicable to the one before us. The land sold belonged to the wife in her own right, and the agreement between her and her husband being valid, the proceeds of the sale were, of course, her separate property; while, in the case at bar, the money advanced in payment for the land purchased by the husband was not the separate property of the wife, and it seems to follow that there was no resulting trust. The parties may have intended by their agreement that the land conveyed to *Miller* should be by him held in trust for his wife; but that agreement not being in writing, was void by the statute of frauds, and the case stands as it would have stood had no such agreement been made. The result is, that the vesting of the money in real estate, the taking of the deed in his own name, and his subsequent disposition of the same estate by will, must be held to have operated as a reduction to the husband's possession, of money to which he was entitled in right of his wife.

PERKINS, J.—In this case, I am constrained to concur in the opinion of Judge DAVISON. By the common law, marriage vests in the husband the personal property of the wife, and vests in him the absolute right to reduce her choses in action to his possession and use. He needs not her consent, and may disregard her opposition to such reduction, where it can be effected without the aid of a Court of chancery.

By the common law, marriage does not vest in the husband either the title, or the right to acquire it, of her real estate. If he obtains this description of her property, it must be by her free gift, or by a contract with her. If he is driven to obtain it by contract, then he will be bound by the stipulations of the contract, because they will be supported by a valid consideration; and, hence, will be enforced by the Courts. If it is a stipulation of the contract that he shall hold the real estate, or the proceeds of its sale, as a trustee for the wife; or shall invest them again for her use and benefit, execution of the stipulation will be compelled. Such were the cases of *Barnett* v. *Goings*, 8 Blackf. 284, and *Resor* v. *Resor*, 9 Ind. R. 347. The stipulations relate to her property, not his.

But where the wife has money or choses in action, absolutely hers, at the time of the marriage, and which the husband can reduce to possession without the aid of chancery, a promise of his, upon so reducing them to possession, to hold them in trust for the wife, is without consideration, and cannot be enforced. Such promises do not make it her property in his hands, and therefore no trust arises. They do not prevent it becoming his property.

*Totten* v. *McManus*, 5 Ind. R. 407, is not in conflict with this position. There the husband did not reduce the property of the wife to possession. He permitted her to retain, and vest it in real estate, in her own name. When that was done, it was placed beyond his reach, without the aid of a Court of chancery. It remained the wife's property, unreduced. So, in this case, had the real estate been conveyed to the wife, the husband, by his own consent, would have conferred his rights of reducing upon his wife, or, rather, waived it as to himself, by an executed contract, which he could not have asked a Court of equity to set aside. It would have been trifling with it to do so. On the other hand, as the husband, in this case, had a legal right to the conveyance to his own use, and so took it, his promise to hold it for the benefit of the wife, was without consideration; and such a contract, it is well settled, a Court of equity will not enforce. *Froman* v. *Froman*, 13

Nov. Term,<br>
1859.<br>
<br>
MILLER<br>
v.<br>
BLACKBURN.

Nov. Term,
1859.

MILLER
v.
BLACKBURN.

Ind. 317. Such a contract did not have the effect to continue the consideration—the choses in action, the property of the wife.

And as to *Totten* v. *McManus, supra,* the case does not show that it was not real estate that the wife changed into cash and reinvested.

The case of *Taggard* v. *Talcot,* cited in *Totten* v. *McManus,* is without point in the case at bar. In that case, it was not the property of the wife which the husband received, but the property of her father; and it was competent for him to give it to the husband upon such terms and conditions as he pleased. [2 Edw. Ch. 628.]

And it may here be remarked that, by ways of jointure and marriage settlement, property might be vested for the exclusive use of the wife, and be placed beyond the control of her husband, during marriage. Walk. Am. Law, 3d ed., 236. Such property the husband could not, against the consent of his wife, take possession of. And if he did, and used it, doubtless he might be held as a trustee of it, and his estate charged with it after his death.

So where property was given to her during coverture, coupled with the condition that it should be for her separate use, and under her sole control. See 2 Kent's Comm., 6th ed., p. 163. In all such cases, the husband, as such, has no right to take possession of the property.

And our statute seems now to have placed all the separate property of the wife on the same footing with that specially given or conveyed to her use at common law, except that she cannot dispose of it, under the statute, while she could when placed at her separate disposal at common law. See *Hetrick* v. *Hetrick,* 13 Ind. R. 44, and cases cited. It is true, that a husband may refuse to reduce to possession the property of his wife, and thus leave it hers. *Gochenaur's Estate,* 3 Am. Law Reg., p. 486. But suppose he should so refuse on one day, if the refusal was not upon a consideration, he might exert his right of reduction on a subsequent day. Did he not do that in this case? See 1 Shars. Blacks. Comm., p. 442, notes.

In the case now before us, then, there being no contract

upon a consideration, on the part of the husband, in tak-
ing the deed for the real estate in his own name, and it
being purchased with funds to which he had a legal right,
and no trust being declared in writing, the property be-
came the husband's absolutely.

In *Ramsdell* v. *Craighill*, 9 Ohio (Ham.) R. 198, it is
held that if husband and wife sell her land, without any
special agreement, and he receives the consideration and
invests it in land in his own name, no trust arises for the
wife. And a subsequent unexecuted promise to pay it to
her, amounts to nothing.

HANNA, J.—I cannot concur in the conclusion arrived at
by the majority of the Court in this case, and desire, as
briefly as I can, to give my reasons.

The Circuit Court found "that the money invested in
the land in controversy was invested and paid by *William
Blackburn*, late guardian of *Amy Castor*, late *Amy Miller*,
and was held by him for her use, and received by him,
as her guardian, in part from the estate of her maternal
grandfather, being a bequest to her," &c., "as one of the
daughters of *Amy Blackburn;* and in part from the estate,"
&c., "of her uncle."

By reference to the evidence, it will be seen that the be-
quest to *Amy Blackburn* was made in 1817; that she was
married to *Robert Miller* in 1831 or 1832; and that the
money was so invested in 1835; upon which, together with
other evidence, the Court based the second paragraph of
the finding, namely, that "at the time said *William Black-
burn* purchased said lands, and paid and invested said
funds in the same, the said investment was made with the
agreement and understanding between the said *Robert
Miller* and *William Blackburn* and *Amy Miller*, that the
same was for her use and benefit; and that said deed to
*Robert Miller* for the same was directed by the said *Wil-
liam Blackburn* to be executed by *Peter Binford*, the gran-
tor, in pursuance of said agreement; and that the said
*Robert Miller* entered into possession of said lands in pur-

suance of said agreement and understanding, and held the same in trust for the said *Amy Miller*, his wife;" and,

" *Third.* That the declared trust was by parol, and not in writing; but that it was made at the time and pending the negotiation for the purchase and investment, and constituted the terms upon which said investment was made."

I take it to be an undeniable proposition that, so far as any question in the case at bar may be involved, the possession of the guardian of *Amy Miller*, of the said fund, was so far the possession of the said *Amy*, to her separate use, as to constitute the fund her separate property, and give her the right of possession, in fact, when she arrived at a proper age, if she was then unmarried. *Barron* v. *Barron*, 24 Verm. R. 390.—*Pinney* v. *Fellows*, 15 *id.* 525.—*Porter* v. *The Bank of Rutland*, 19 *id.* 410. If this is true, it may be conceded (although there are authorities the other way) that it follows that, at law, her husband would have had the right, after marriage, to have made this fund his own, by reducing it to possession, whatever his rights might have been in equity. As to this, see 2 Kent's Comm. p. 117. But the fund not being in her possession, in fact, the marriage, of itself, would not divest her of that separate estate, and vest it in him. This is manifest from the fact that, if he died before he reduced it to possession, it would not go to his representative, but remain her property. 5 Johns. Ch. 196.—33 Maine R. 43.—15 N. Hamp. R. 568.—8 Mass. R. 99.—17 *id.* 57.—14 B. Mon. 379.

It is also true, that if he had resorted to a Court of equity, to enable him to reduce the property to possession, the Court might, and most probably would, have compelled him to make a suitable provision for her. 14 S. & M. 59.—Story's Eq., § 1403.—Hill on Trustees, p. 408, and note.

She possessed, then, at the time of the marriage, the right to this separate personal property in the hands of her guardian. No trust as to that property was then interposed; and if any exists, it rests upon a post-nuptial agreement. As to the power of the wife to dispose of her

separate property by such agreement, Judge STORY says: "There is a material distinction whether it be personal or whether it be real estate. In the former case, her power to dispose of it can affect her husband's rights only; and, therefore, his assent is conclusive upon him." 2 Story's Eq., § 1391, and note. That after marriage, agreements may be made, in regard to the wife's separate property, binding in equity upon the husband, is fully established by our own Court. *Resor* v. *Resor*, 9 Ind. R. 347.—*Id.* 100. —5 *id.* 407.—8 Blackf. 284. And is conceded in the language used in the opinion in this case. And, as a general rule, whenever a contract would be good at law, when made with trustees for the wife, that contract will be sustained in equity, when made with each other without the intervention of trustees. Story's Eq., §§ 1372, 1380.—24 Verm. 398.—2 Kent's Comm., pp. 147, 154.—1 P. W'ms, 125.—2 Verm. R. 659.—2 Johns. Ch. 537.—10 Ves. 146.— 9 Paige, 284.

In the case at bar, whatever might have been the right of *Miller* to sue at law and recover, and in that manner, or otherwise, reduce to possession this separate property of the wife, yet as he did not see proper to exercise that right, but, as the Court find, agreed to a disposition of it in derogation of his marital rights, he in effect waived any right which he might have to the property. I am not able to perceive why the case does not fall within the doctrine laid down in 2 Story's Eq., § 1380, namely—

"That whenever real or personal property is given, or devised, or settled upon a married woman, either before or after marriage, for her separate or exclusive use, without the intervention of trustees, the intention of the parties may be effectuated in equity, and the wife's interest protected against the marital rights and claims of her husband. In all such cases, her husband will be held a mere trustee for her; and though the agreement is made between him and her alone, the trust will attach upon him, and be enforced in the same manner, and under the same circumstances, that it would be, if he were a mere stranger. And it will make no difference, whether the separate es-

tate be derived from her husband himself, or from a mere stranger; for, as to such separate estate, when obtained in either way, her husband will be treated as a mere trustee, and prohibited from disposing of it to her prejudice."

It is true, the section last quoted speaks of property given, &c., "for her separate use," and, in the case at bar, neither the finding of the Court nor the evidence shows that the bequest was thus limited; but, under the authority of STORY, first above quoted, § 1391, I do not see but that the husband is as completely controlled in an instance where, after marriage, he should agree with her that she might thus dispose of her personal property, namely, "for her separate use," as in an instance where the bequest itself contained such a limitation.

If I am correct in this conclusion, then, by the last section quoted from STORY, it is established that the husband himself may become the trustee, and will be held bound as such. See, also, Hill on Trustees, p. 75, where it is said that "there is no question but that a husband may hold property as a trustee for the separate use of his wife."

In the case at bar, the Court found that the husband held the property as the trustee of the wife. In other words, the Court, by its finding, negatives the idea that the husband had reduced the property of the wife to his possession, as husband.

Mr. HILL uses the following language: "What will constitute an actual reduction into possession, is not susceptible of exact definition, but depends on intention. There must be, in the first place, some distinct act, evincing a determination to take, as husband." Hill on Trustees, 415, note 1.

Thus, where a mother and daughter were entitled to certain slaves as co-distributees, but the slaves were never divided, and the husband of the daughter, residing on the mother's plantation, worked the slaves together, it was held that the marital rights of the husband had not attached. *Durant* v. *Salley*, 3 Strobh. Eq., p. 159.—*Rogers* v. *Burnpass*, 4 Ired. Eq., p. 385.

So where the husband receives from the executors of an

estate, from which his wife is entitled to a legacy, money, not as an advance, but under a contract to refund, or an understanding that it is to be employed in part payment of land bought in the wife's name. *Savage* v. *Benham,* 17 Ala. R. 120.—*Barron* v. *Barron,* 24 Verm. R. 375. In the latter case, it is held that the receipt of the money must be the result, or by virtue of his marital rights.

The question of reduction to possession thus depending, in a great measure, upon the husband's intention, acts which, *prima facie,* would establish a reduction, may be shown by other circumstances, or by his declarations at the time, or subsequently, to have been intended for the benefit of, or in trust for, his wife. *Hind's Estate,* 5 Whart. 138.—*Gray's Estate,* 1 Barr, 327.—*McDowell* v. *Potter,* 8 *id.* 191.—*Gochenaur's Estate,* 23 Penn. St. R. 460.—*Mason* v. *McNeil,* 23 Ala. R. 201.—*Resor* v. *Resor,* 9 Ind. R. 349.

Keeping these authorities in view, and looking at the finding of the Court below, and the evidence which sustains that finding, I dissent from the conclusion arrived at by this Court, namely, that the several acts of the parties, based upon that agreement and heretofore stated, "operated as a reduction to the husband's possession, of money to which he was entitled in right of his wife." This implied or constructive reduction to possession 'could not exist, in the case at bar, because the intention, upon the part of the husband, to so act, was, so far as the record speaks, entirely absent, at the time he took the deed to the land, and thereby received, in that form, the fund which had been the separate property of the wife. He received it, as we have seen, under an agreement which, I believe, in equity, constituted him a trustee of the property for her use. He could not afterwards, in my opinion, by his own act, change the relation which he bore to the property and the person for whose use he held it, so far as to then make it his own; for the reason that to permit him to do so would be opening the door to a wide field of fraud upon the rights of persons for whose use property is held, and who would thus, without their consent, be deprived of it

by those standing in a fiduciary capacity towards them. Having received the property, as a trustee, all his acts, in reference thereto, must conform to, and be presumed to be intended by him to carry out in good faith, that trust; unless that relation should be afterwards changed. The circumstances of the case at bar are such that I am not aware of anything that could have intervened to have changed that relation, unless it might be a subsequent agreement made between`him and his wife in reference thereto. How far such an agreement, if made, might have been binding upon her, it is not necessary to inquire, as none such was established.

Having thus shown that the said *Amy Blackburn* had the right, before her marriage to *Robert Miller*, to certain legacies, as her own separate property; that the marriage did not, of itself, vest that property in him; that up to the time the deed to the land in controversy was made to him, he had not reduced her property to possession; that by the agreement then made, the intention of the parties was manifested that it should remain her separate property, though vested in his name, but for her use; the only inquiry now to be made is, whether these several propositions were established by legitimate evidence.

It is insisted by the appellants, that the trust, to have been operative, should have been in writing. In this a majority of the Court concur, and make the whole case turn upon that question.

The appellants rely mainly upon the case of *Irwin* v. *Ivers*, 7 Ind. R. 308. The facts in that case were that the father and mother of the parties held a certain demand for money, &c., also a tract of land in *Ohio*, both of which they transferred, by proper instruments in writing, absolute on their face, to the defendant, their son, who sold the land and collected the money. His brothers and sisters sued, charging that he held it in trust for all the children, &c. The charge was sustained by parol evidence. The Court held that the parol evidence varied materially both the assignment and the deed, and proved a specific trust, verbally declared, and, therefore, void under the statute.

In that case, the Court also held "that a resulting or implied trust need not be in writing, and [might] be proved by parol, even against the face of the deed or the answer of the trustee, is a principle too plain to admit of controversy." The Court held further, as I construe the opinion, that there was no implied or resulting trust, for two reasons; first, that where a trust was declared, there could be no room for implication; and, second, that no money had been advanced by the *cestui que trust.*

From the facts in the case, as stated, proved, and found by the Court, it will be at once seen that the second reason given by the Court, in the case cited, has no application in the case at bar. Here the money was all advanced by *Amy Miller*, or her guardian for her, out of her separate property, as I maintain, for I cannot concur in the conclusion of the Court that the legacy, &c., was not her separate property after marriage. It is necessary to inquire how far she had the right to control it against her husband's will, or without his consent; for the facts in the case, and the finding of the Court, show, that whatever control she may have exercised over it, was with his full consent as to the disposition thereof; and in such an instance, the authority of Story, § 1391, is, that he is concluded by that consent, and of course his heirs also. But there are many authorities fully sustaining the position, that a legacy or distributive share of a wife, in the hands of an executor or guardian of the wife, is, before marriage, and continues after marriage to be, her separate property, until reduced to the actual possession of the husband. 5 Ves. 737.—1 Lead. Cas. in Eq., 333, 352.—19 Verm. R. 410.—2 Kent's Comm., p. 146.—1 Ves. 186.—9 N. Hamp. R. 309.—12 *id.* 164.—6 Met. 537.—6 Johns. Ch. 178.—5 *id.* 198.—10 Verm. R. 446.—24 *id.* 396.

A broad distinction, as it appears to me, exists between the case in 7 Ind. and this, in other respects. That was a case in which a specific trust might have been very properly declared by the parties to the original transaction. In this case, the grantor of the land was a stranger to the parties to the mutual arrangement, and had no interest

whatever in declaring a trust. No writing, other than the deed from such grantor, was necessary to complete the conveyance of the land; so that neither of the parties to that agreement had an opportunity to insert such a clause in any writing then executed, or necessary to be executed, unless it should be held that a separate writing to that effect should have been executed. Such a writing, as to an innocent purchaser for a valuable consideration, it appears to me, would 'form no part of the deed, and could have no more force, nor be any further a notice, than the verbal agreement. It is not a case, therefore, peculiarly or positively requiring a declaration in writing, of the trust intended to be created. It is not necessary to inquire whether 'the first reason given by the Court in the case cited, is the law to the full extent there indicated, to-wit,' that where a trust is declared there is no room for implication. See, on this point, Hill on Trustees, 116, and note. But it is clear to my mind that the facts in the case cited in 7 Ind. were so different from those in the case at bar, that it is not authority in point to sustain the position assumed by the appellant.

If this is a case in which the trust was not imperatively required to be in writing, the next question is, whether there could arise a resulting trust. That the purchase of land, and payment of the consideration-money by one person, where the deed is taken in the name of another, will raise a trust in favor of the purchaser, is a doctrine too well settled to need more than a reference to it. 2 Story's Eq., § 1201. And, going a step further, it might be safely said that there are now so many authorities and adjudicated cases, establishing the doctrine that a trust results to the wife, where the husband buys land with her separate property or the savings of her separate estate, that it can scarcely be classed among questions open to controversy. See 1 Johns. Ch. 450; 3 *id.* 77; 1 Johns. (Md.) Ch. 523; 1 Sandf. Ch. 214; 15 Verm. R. 525; 24 *id.* 375; 23 L. J. Ch. 890; 14 Ill. R. 505; 10 Hare, 209; and also the cases in our own Court heretofore cited.

That an implied or resulting trust may be established

by parol evidence, has been so often decided by this Court, that it is too late now to insist upon the adoption of any other rule of evidence in relation to that point. Indeed, the change of the rule, in that respect, at this day, would overrule many adjudicated cases, beginning as far back as *Elliott* v. *Armstrong*, 2 Blackf. 198, and continuing down through *Jenison* v. *Graves*, *id.* 440; *Blair* v. *Bass*, 4 *id.* 539; *Baker* v. *Leathers*, 3 Ind. R. 558; *Fausler* v. *Jones*, 7 *id.* 277; *Barnett* v. *Going*, 8 Blackf. 285; *Totten* v. *McManus*, 5 Ind. R. 408; *Resor* v. *Resor*, 9 *id.* 347; and many other cases that might be referred to.

If this current of decisions is sustained, it follows that of a mere resulting trust parol evidence was properly received. That this was a resulting trust I entertain no doubt.

*Per Curiam.*— The judgment is reversed with costs. Cause remanded, &c.

*R. C. Gregory, A. Thompson,* and *J. Ristine,* for the appellants.

*J. E. McDonald* and *S. C. Willson,* for the appellee.