STANDEFORD *et al. v.* DEVOL *et al.*

HUSBAND AND WIFE—MARRIED WOMEN.—In 1843, *A* contracted with *B*, the wife of *C*, and *D*, the daughter of *C*, for the sale to them of certain land, for 1,000 dollars, one-half whereof was paid at the date of contract, and a title bond executed by *A* for the conveyance of the land to *D*, and *B* and *D* executed their promissory note to *A*, at twelve months, for the other half of the purchase money, which was paid at maturity, and then said bond was canceled, and, under another arrangement, *A* conveyed said land to *E*, a son-in-law of *B* and *C*. The first payment on the land was made in part by the transfer of a note to *A*, which *B* held in her own right, *C* having nothing to do with the transfer, and all of the residue of the purchase money was paid by *B*, with her own money, received from the estate of her grandfather. Said money was received by her after her marriage with *C*, but never came into his possession, and was never claimed by him by virtue of his marital rights, or otherwise. Said money did not come to her with any limitation to her separate use. *B* and *C* and their family together

Standeford et al. *v.* Devol et al.

occupied and used said land. Action to subject said land to payment of *C's* debts.

*Held*, that the money with which said land was purchased never became the property of *C*, the husband, and that the land therefore could not be subjected to the payment of *C's* debts.

*Held*, also, that, prior to the laws of this State enlarging the rights of married women, the personal property of the wife, which came to her after the marriage, did not become the property of the husband, *ipso facto*, but only when it had been actually reduced to possession by him, by such acts as evinced an intention to divest his wife's right or title, and make it absolutely his own.

This case is distinguished from *Miller* v. *Blackburn*, 14 Ind. 62.

APPEAL from the *Putnam* Circuit Court.

WORDEN, J.—This was an action by the appellees against the appellants, the object of which was to reach certain lands in the hands of *Joseph Standeford*, and apply the proceeds to the payment of certain judgments held by the plaintiffs against *John Standeford*, on the ground that the money of said *John* had been invested in the purchase of said lands. Trial, verdict and judgment for the plaintiffs.

The following is the case made by the evidence: The plaintiffs are the judgment creditors of *John Standeford*, who is insolvent. About the year 1843 one *Josiah Harding* made a contract with *Hannah Standeford*, wife of said *John*, and *Sarah*, their daughter, who was then about 18 years of age, for the sale to them of the land in question, at the price of 1,000 dollars, one half of which was paid down, and a title bond executed for the conveyance of the land to said *Sarah*. *Mrs. Standeford* and *Sarah* executed their promissory note for the residue of the purchase money, payable in twelve months. The residue of the purchase money being afterwards paid, the title bond was surrendered, and, by an arrangement of the parties, a conveyance was executed to one *William L. Mahan*, a son-in-law of *Mr.* and *Mrs. Standeford*.

Such further conveyances were finally made as vested the title in *Joseph Standeford*, who is a son of *Mr.* and *Mrs. Standeford*. *Joseph*, it may be observed, is not in a position to hold the land free from the claims of the plaintiffs, if the money invested therein be deemed to have been the money of *John Standeford*, his father. The first payment on the land was made in part by the transfer of a promissory note to *Harding*, which *Mrs. Standeford* held in her own right. Her husband had nothing to do with the transfer. Except the note above mentioned, *Mrs. Standeford* paid for the land with her own money, which she received from the estate of her grandfather. This money was received by her long after her intermarriage with *Standeford*, and never went into his possession, nor did he ever receive or claim it, by virtue of his marital rights, or otherwise. He never paid anything on the land, nor had he anything to do with the contract of purchase. The money thus received by *Mrs. Standeford* and paid for the land did not come to her with any kind of limitation to her separate use. *Standeford* and his family have had the use and occupation of the land since it was thus purchased.

The above are believed to be all the material facts in the case, as condensed from the testimony of the witnesses. It is not a case of conflict of evidence, and the question arises, whether, on the foregoing facts, the plaintiffs were entitled to recover.

Was the money thus invested in the land, in legal contemplation, the money of the husband, in such sense as to enable his creditors to pursue it? The case must be decided upon the law as it stood before our recent statutes enlarging the rights of married women. Had the money in question been in the hands of *Mrs. Standeford* at the time of the marriage, the case would have been covered by what was said in the case of *Miller* v. *Blackburn*, 14 Ind. 62, in overruling the petition for rehearing. On page 82, the following language is

Standeford et al. *v.* Devol et al.

employed: "The money invested in the land, not being the separate property of the wife, became, in my opinion, the property of the husband by virtue of the marriage. It was not a mere chose in action, which, in order to make it the property of the husband, required a reduction to his actual possession. Money in the hands of a guardian is deemed, in law, to be in the possession of the ward, and that possession of the ward became the possession of her husband upon her marriage." The case goes upon the theory that the money was in the possession of the wife, (the possession of her guardian being her possession,) at the time of the marriage. If we were right in assuming that the possession of the guardian was the possession of the ward, the doctrine stated is sustained by the authorities. Says *Mr. Kent*, (2 Com. 10 ed. p. 135,): "As to personal property of the wife, which she had in possession at the time of the marriage, in her own right, and not *en autre droit*, such as money, goods and chattels, and moveables, they vest immediately and absolutely in the husband, and he can dispose of them as he pleases, and on his death they go to his representatives, as being entirely his property."

But the case before us is an entirely different one. Here the claim due to *Mrs. Standeford*, before it was paid to her, was, at most, but a chose in action; and the husband was not the owner until he had reduced it to his possession, which he never did. "Marriage is only a qualified gift to the husband of his wife's choses in action, viz: that he reduce them into possession during its continuance," &c. 1 Bright's Hus. and Wife 36; I Kent Com. 122. Says *Mr. Bright*, p. 48: "A mere intention to reduce the wife's choses in action into possession will be insufficient. The acts to effect that purposes must be such as to change the property in them, or, in other words, must be something to divest the wife's right, and to make that of the husband absolute." Indeed, the husband may

take possession of his wife's choses in action, without making them his own. "If he take possession, in the character of trustee and not of husband, it is not such a possession as will bar the right of the wife, if she survive him. The property must come under the actual control and possession of the husband, *quasi* husband, or the wife will take as survivor, instead of the personal representatives of the husband." 2 Kent Com. 127.

In Hill on Trustees, 3 Am. ed., page 621, note, it is said: "What will constitute actual reduction to possession is not susceptible of exact definition, but depends on intention. There must be some distinct act evincing a determination to take as husband."

These are elementary principles, and applied to the case before us, show that the money invested in the land by the wife, was not the money of the husband. He not only never had the possession of the money, but he did no act whatever evincing an intention to claim it or make it his by virtue of his marital rights. On the contrary, he left it in the possession and entirely under the control and dominion of his wife, and suffered her to invest it as above stated, thereby showing that he did not intend to claim it or make it his own. Indeed, there is no ground to claim that the money was that of the husband, unless it be upon the ground that the receipt of the money by the wife during the coverture made it *ipso facto* the money of the husband. But there is this difference between things in action and in possession. It is undoubtedly true, as was held in the case of *Miller* v. *Blackburn*, *supra*, that money or other personalty in the possession of the wife, in her own right, at the time of the marriage, vests absolutely in the husband, without any further act on his part to make it such. But where there is a chose in action due to the wife at the time of the marriage, or accruing to her during the coverture, he, in order to make it his, must do some act evincing

Standeford et al. *v.* Devol et al.

an intention to make it his own; in the language of the books, his acts must be such as to change the property and divest his wife's right.

But this doctrine does not rest upon the elementary books alone; the adjudicated cases fully sustain the proposition that, in the case before us, there was no such reduction of the money to the possession of the husband as to make it his. Some of these cases will be adverted to.

The case of *Totten* v. *McManus,* 5 Ind. 407, was a bill filed by a creditor of *McManus* to reach certain lands purchased by his wife after coverture, with means which she had before marriage, but which she reduced to cash after marriage. It was claimed that the money, the moment it came into the hands of the wife, became the property of the husband. It was held otherwise by the Court.

This case is less satisfactory than it would have been had it appeared clearly, whether the property which the wife thus turned into cash was limited to her separate use. The case goes on the theory that the property was the wife's separate property, and is, therefore, perhaps not strictly in point here. But in *Miller* v. *Blackburn, supra,* it was said by *Perkins,* J., in speaking of the case of *Totten* v. *McManus:* "There the husband did not reduce the property of the wife to possession. He permitted her to retain and vest it in real estate in her own name. When that was done it was placed beyond his reach, without the aid of a court of chancery. It remained the wife's property unreduced."

In the case of *Gochenous' estate,* 23 Penn. 460, the Court, after quoting the passage from *Kent* to the effect that the property must come under the control and possession of the husband, as husband, proceeds as follows: "This distinction has been fully adopted in *Pennsylvania,* and a series of well considered cases, carrying out the principle to its logical result, has established that reduction into possession, so as to

work a change of ownership, is a question of intention to be inquired of upon all the circumstances. Conversion is not reduction into possession, but only evidence of it, and therefore conversion may be explained by other evidence, negativing the intention to reduce to possession in such a manner as to transfer the title. According to these cases marriage is treated as only a conditional gift of his wife's choses in action, or, to speak more accurately, a gift to the husband of her power to dispose of them to himself or any one else, by force of the dominion to which he has succeeded, as the representative of her person; and because the gift is conditional, he has a right to reject it by refusing to perform the condition. The law does not cast it upon him beyond his power of resistance; for every gift requires the assent of the donee, and hence clear proof that the husband received the wife's money as a loan, or a disclaimer of intention to make it his own property, proved by his admissions, will preserve her right of survivorship."

The case of *Timbers* v. *Katz*, 6 Watts and Serg. 290, was much like the present in many of its features. There, a married woman had a sum of money due to her on a bond. The money was paid to her by the obligor, and, upon payment, she and her husband executed a receipt to the obligor for the payment. She afterwards invested the money in land in the name of her daughter. It was held, *Gibson*, C. J., delivering the opinion of the Court, that the transaction was not only not fraudulent, but that the money was not the money of the husband, it not having been reduced to his possession, and that the creditors of the husband could not pursue it into the land. This is a very well considered case, in which the law is clearly stated, and is strictly in point with the one before us.

We have only to observe, further, that there is no ground whatever on which to claim that the note transferred by *Mrs.*

*Standeford* in part payment of the land, had been made the property of her husband by any act of his whatever.

We are of opinion that on the case made by the evidence, the plaintiffs were not entitled to recover, and hence, that a motion for a new trial, which was made, should have prevailed.

*Per Curiam.*—The judgment below is reversed with costs, and the cause remanded.

*McDonald & Porter*, and *Williamson & Daggy*, for the appellants.

*McDonald & Roache*, and *John Hanna*, for the appellees.