No. 8653.

## WALDRON v. SANDERS ET AL.

HUSBAND AND WIFE.—*Wife's Personalty at Common Law.*—*Reduction to Possession.*—Before 1851 the common law in respect to husband and wife was in force in Indiana, whereby the wife's personal estate, such as money, goods, chattels, and movables which she had in possession at the time of the marriage, vested immediately and absolutely in the husband; and so of money in the hands of her guardian, from whom it was received by the husband.

SAME.—*Common Law.*—*Trust.*—If at common law a wife, having money in her own right and custody, delivers it to her husband under his promise to invest it in real estate for her and in her name, but he, without her knowledge, takes the title in his own name, he does not hold the land in trust for her, because the money was in fact and in law not hers but his. *Tracy* v. *Kelley*, 52 Ind. 535, distinguished and criticised.

From the Lawrence Circuit Court.

*J. H. Louden* and *R. W. Miers*, for appellant.

*J. W. Buskirk* and *H. C. Duncan*, for appellees.

WOODS, J.—Action by the appellant against the appellees to recover the possession of real estate. The appellee Isom W. Sanders had made an assignment for the benefit of his creditors, and had conveyed the lands in question, his wife and co-appellee not joining, to the assignee, who, in the execution of the trust, had sold and conveyed to the appellant. The appellee Elizabeth Sanders filed a cross complaint, wherein she charged that eighty acres of the land were purchased with her money, by her husband, under an agreement to make the purchase for her, and that, in violation of this agreement, without her knowledge, he had taken the deed in his own name, and had included the land in his deed of assignment; that the appellant purchased with notice of her rights.

The jury found in favor of the said Elizabeth in respect to the eighty acres, and the court gave judgment accordingly.

The appellant insists, and we think correctly, that the verdict is not sustained by the evidence. In reference to the purchase and ownership of the land, the only testimony is that of the appellees, which was as follows:

Mrs. Sanders: "I was married to my co-defendant, Isom W. Sanders, in the fall of 1835; the next spring we moved on the eighty-acre tract of land described in the complaint; we rented it of John Sanders, my husband's father; some time in the fall or winter of 1837, I received about $300 in money from my father's estate in Kentucky; my husband brought it to me; I kept it in the house under the head of my bed, for a short time; I told Mr. Sanders, my husband,

that I liked that eighty tract of land better than the one he had entered in Greene county, and that I wanted him to buy it for me, for a home; I gave him the money, and told him to buy it for a home for me; I did not know that the deed was made to my husband, until after the assignment in 1875; I gave no instructions as to how the deed should be made, or in whose name it should be made; just said I wanted it for a home; did not consent or object to the deed being made to him; do not remember how long the money was in the house; there was about $300 of it; do not think I counted it; do not remember size or number of the bills; do not know that it came from my father's estate, except that my husband came from there, and said it did; he had gone to Kentucky at my request, to get money coming to me from my father's estate; I did not see the money paid for the land; was not present when the deed was made; the deed, after it was made, was brought to our house, and has been there ever since, in a drawer; our house at that time was a little log cabin, with only one room; I can read and write; never paid any taxes; made no enquiry about taxes; paid no attention to the title to this eighty-acre tract, and did not know in whose name the title was, until a short time after the assignment; knew that the deed was made to my husband from that time on; I knew that Mr. Houston, the assignee, had advertised this eighty-acre tract for sale, with the rest of my husband's land; knew it some time before the sale, several weeks; did not attend the sale; knew the day of the sale, and knew that my husband started there; was able to ride, but did not go; did not authorize any one to make an announcement for me, that my money paid for the land, or that I claimed any interest in the land; never had any conversation with Mr. Waldron about it; after the assignment and before the sale, I told Mr. Houston that the eighty-acre tract had been bought and paid for with the money I inherited from my father's estate, and that I expected to claim it, and have a home there in my old days; I did nothing in the way of giving notice at the sale;

I told Mr. Sanders to ask attorneys Rhoads & McNutt what I should do, and he did, and they said I need not do anything."

The appellee Isom W Sanders testified : " In the fall of 1837 I brought from Kentucky about $300 from my wife's former guardian ; it was my wife's money ; she and I talked about investing it in land, and what land we should invest it in ; she said she would rather I would buy the eighty-acre tract on which we were living, which was the eighty acres described in plaintiff's complaint ; she gave me the money, and said she wanted me to buy the eighty-acre tract for a home for her ; I took the identical money she gave me, and gave it to my father for said eighty acres ; the deed was not made for some two or three years ; my wife did not know, to my knowledge, that the deed had been taken in my name until after the assignment ; she gave me no instructions when she gave me the money, or at any other time, as to how the deed should be made ; I had the deed recorded ; I paid the taxes ; I knew the deed was made to me ; I made an assignment on the — day of November, 1875 ; I put this eighty-acre tract of land in the schedule with the other land I owned ; made just such papers as my lawyer directed ; I suppose I swore to my schedule."

We deem it hardly inferable from this evidence that Mrs. Sanders understood that the title was to be taken in her name. The husband testifies that she gave no instructions how the deed should be made.   But, waiving this and assuming that the evidence is sufficient to warrant an inference that there was an understanding, express or implied, between them that the title should be taken in her name, we are compelled to the conclusion that there was no resulting trust in favor of the wife, because, as the law then was, the money was not hers.

At the time the money was received of her guardian, and when invested in the land, the common law, in respect to the rights of husband and wife, was in force in this State, and presumably so in Kentucky, whence the money was brought. That law is thus stated by Chancellor Kent (2 Com., p.

143): "As to personal property of the wife, which she had in possession at the time of the marriage in her own right, and not en autre droit, such as money, goods, and chattels, and movables, they vest immediately and absolutely in the husband, and he can dispose of them as he pleases, and on his death they go to his representatives, as being entirely his property." And it has been declared, that "Money in the hands of a guardian is deemed, in law, to be in the possession of the ward, and that possession of the ward became the possession of her husband upon her marriage;" and it does not, like a mere chose in action, require a reduction to actual possession in order to make it the property of the husband. Standeford v. Devol, 21 Ind. 404; Miller v. Blackburn, 14 Ind. 62.

It clearly follows, that while yet in the hands of the guardian in Kentucky, the money in question was the money of Isom W. Sanders; it was his when in his actual possession; it was his when in the actual custody of his wife, "under the head of her bed;" he could have reclaimed or seized upon it at any time; and, if when she returned it to him, he promised to invest it in the land for her and in her name, the promise was invalid, and affords no ground for either legal or equitable relief. If a reduction to possession were conceded to have been necessary, the taking and holding of the title in his own name were clearly an effectual reduction.

Counsel for the appellee cite Barnett v. Goings, 8 Blackf. 284, Totten v. McManus, 5 Ind. 407, Wilkins v. Miller, 9 Ind. 100, McDonald v. McDonald, 24 Ind. 68, Tracy v. Kelley, 52 Ind. 535, and Taggard v. Talcott, 2 Edw. Ch. 628; but these cases are all plainly distinguishable, and the distinction is clearly indicated in Miller v. Blackburn, Standeford v. Devol, and McDonald v. McDonald, supra.

Counsel suggest, and, indeed, it is said in Tracy v. Kelley, supra, that Miller v. Blackburn was overruled by McDonald v. McDonald; but the point considered in that case, in connection with which a reference is made to the other, was whether there could be a resulting or implied trust if there

Waldron *v.* Sanders *et al.*

had been an express parol agreement for the same trust as, without the agreement, would be implied; and, in support of the view there declared, reference is made to the dissenting opinion of HANNA, J., and to the opinion of WORDEN, J., on the petition for a rehearing in *Miller* v. *Blackburn;* but if there is any inconsistency between the two cases in respect to the principles now under consideration, or in reference to their proper application, it has not been pointed out, and we do not perceive it.

In *Tracy* v. *Kelley* the money was devised for the especial purpose of purchasing for the devisee a home in her own name, and, of course, could not be reduced to the husband's possession, as his own, without her consent.

The doctrine of *Miller* v. *Blackburn* has been re-affirmed in *Buchanan* v. *Lee,* 69 Ind. 117, and in the more recent case of *Westerfield* v. *Kimmer,* 82 Ind. 365.

Judgment reversed, with costs, and with instructions to sustain the appellant's motion for a new trial.

## ON PETITION FOR A REHEARING.

ELLIOTT, J.—We have given the argument of counsel upon the petition full consideration, and have carefully re-examined the evidence, but find no reason for changing the ruling announced in our former opinion.

The rule of the common law was in force when Isom Sanders received the money from his wife, and, under that rule, it became his the moment it was reduced to possession. The evidence not only shows that he reduced it to possession, but it also shows that he used it in the purchase of property which he bought in his own name, and which, for a long series of years, was treated as his.

We think it very easy to perceive the difference between this case and *Tracy* v. *Kelley,* 52 Ind. 535. In that case the husband received the money under a bequest directing that it be used for the specific purpose of purchasing property for his wife. Having received the money under the conditions

imposed by the bequest, and having no right to take it upon any other, he could not reduce it to possession so as to make it his own. In the present case there is no such element as controlled the decision in the one cited.

Petition overruled.