1817.

Livingston
v.
Livingston.

D. Livingston *against* M. & E. Livingston.

A husband and wife may contract, for a *bona fide* and valuable consideration, for a transfer of property from him to her.

Where husband and wife agreed, by *parol*, that he should purchase a lot in her name, and build a house thereon, and that he should be reimbursed the cost thereof out of the proceeds of another house and lot of which she was seised, which should be sold for that purpose; and the husband having executed the agreement on his part, the contract failed by the sudden death of the wife, who left infant children, to whom the legal estate in both lots descended; the agreement was decreed to be carried into effect, and the lot was ordered to be sold, and a conveyance executed by the infant trustees, by their guardian *ad litem;* and their father, (the plaintiff,) and the master, were directed to join in the conveyance; and the plaintiff to be reimbursed his advances, out of the moneys arising from the sale.

Though such conveyance by the husband to the wife is presumed, in the first instance, to be intended as an advancement and provision for her, yet that presumption may be rebutted by *parol* proof.

† 7 *Ann,* c. 91.     A *resulting* trust is within the statute, (Sess. 24. ch. 30. s. 7. 1 *N. R. L.* 147.†) and an infant may be decreed to convey such trust, it being established by *parol* proof.

September 2d.     THE plaintiff, in *May,* 1809, married *Eliza Oothout,* who was seised in fee, in her own right, of a house and lot (No. 56) in *Greenwich* street. After the marriage, the plaintiff expended 2,500 dollars in repairs and improvements on the [ * 538 ] *house. In *April,* 1814, the plaintiff and his wife *agreed* that he should purchase, in her name, another lot, and build a house thereon, and that the cost of erecting such new house should be paid out of the proceeds of the house and lot first mentioned, on a sale thereof for that purpose, to be made when the new house was completed. The bill stated, that in pursuance of this agreement, the plaintiff, in *May,* 1814, purchased a lot (No. 51) in *Greenwich* street, for 6,000 dollars, which he paid out of his own money, and took a deed in his wife's name; that he erected a house on the lot, in the building of which he expended above 16,000 dollars of his own money. That in *September,* 1815, he and his wife went to reside in the new house, and his wife, soon after, on the 21st day of the same month, died suddenly, while the plaintiff, with her concurrence, was in treaty for the sale of the first house and lot. That the wife of the plaintiff left two infant children, her heirs, and to whom the legal estate in both houses and lots descended. The plaintiff alleged, that the consideration for the agreement between him and his wife, having thus failed, he was entitled to avoid the agreement, and consider the children as *trustees* for the plain-

tiff, in regard to the second house and lot. The bill prayed that the defendants might be decreed to release the last-mentioned house and lot to him, or that the same might be sold, and he be reimbursed the moneys he had so advanced, out of the proceeds of such sale.

The defendants, being infants, put in their answer by a clerk of the Court, as their guardian *ad litem*, and admitted only the seisin of their mother in the first lot, and her death.

The plaintiff proved the material facts stated in the bill.

*T. L. Ogden,* for the plaintiff.

\*THE CHANCELLOR. I entertain no doubt of the fairness and equity of the agreement between the plaintiff and his late wife, as stated in the bill, and proved by one of the witnesses. A husband and wife may contract, for a *bona fide* and valuable consideration, for a transfer of property from him to her. It was admitted as a clear point in the case of *Lady Arundell* v. *Phipps,* (10 *Vesey,* 146—149.) that a married woman, having separate property, may purchase, by the sale of it, other property, even of her husband, and have it limited to her separate use. Other authorities to the same point are referred to by *Atherly,* (*Treatise on Marriage Settlements,* p. 160, 161.) who considers the point supported by reason as well as by authority. Though the agreement here was by parol, yet it was carried into effect on the part of the plaintiff, and he has the clearest equity either to have the house and lot first mentioned sold, and the proceeds, or a part of them, paid over to him, or to have the second house and lot conveyed to him, on the ground of a failure of the contract by the sudden death of his wife. If there had been no issue between them, the hardship to the plaintiff would have been more striking, in suffering the property in both lots to pass immediately to the wife's collateral relations, but the principle of equity would not have been different. The circumstance, that the heirs of the wife are the children of the plaintiff, only gives a graver and more interesting character to the case. The presumption would undoubtedly be, in the first instance, that the conveyance to the wife was intended as an advancement and provision for her. This presumption was admitted in the case of *Kingsdon* v. *Bridges,* (2 *Vern.* 67.) but I do not see why it may not be rebutted, as has been done in this case, by parol proof. In *Finch* v. *Finch,* (15 *Vesey,* 43.) it was held, that though, when a purchase is made in the name of a person who does not pay the purchase money, the party paying it is considered in equity as entitled, yet if the person whose

[ \* 539 ]

1817.

LIVINGSTON
v.
LIVINGSTON.

†Sess. 37. ch.
108.

[*541]

*name is used be a child of the purchaser, it is, *prima facie,* an advancement, but that it was competent for the father to show, by proof, that he did not intend advancement, but used the name of his child only as a trustee. If the agreement had here been for an exchange of lots, I might thus have ordered the infant heirs of the wife to convey to the plaintiff the house and lot first mentioned, considering them as infant trustees, according to the case of *Smith* v. *Hibbard,* (*Dickens,* 730.) But the agreement was, that the first house and lot should *be sold,* and the plaintiff reimbursed out of the proceeds for "the expense of erecting such new houses. This is the agreement as stated in the bill. I presume I have power to carry this partly-executed agreement into effect, under the 3d section of the act of the 9th of *April,* 1814,† entitled, "an act concerning infants;" and it appears to me that it would be more beneficial to the infants to have this agreement specifically executed, than to have the new house and lot conveyed to the plaintiff. It must be observed, that upon the terms of the agreement, as stated by the plaintiff, he is only entitled to be paid, out of the first house and lot, *the expense of erecting the new house,* and which, according to the testimony of the mason who built it, was about 11,000 dollars, though, according to the carpenter's testimony, the whole expense was upwards of 12,000.

The prayer in the bill is, that the infants may be decreed to convey to the plaintiff the house and lot last mentioned, or that *the said house and lot* may be sold. Strictly considered, the prayer is to have *the last* house and lot sold; and as there is no prayer for general relief, but only this specific prayer, I am the more particular in this criticism on the bill. I am content, however, to consider the prayer for a sale as alluding to the first house and lot, and I presume it was so understood, for the plaintiff has no· pretext of right to have the last house and lot sold. The question, then, is fairly before me, which course ought to be pursued. *If the release is to be adopted, it must be on the ground, that the contract has failed, and that the infants hold the second house and lot for the plaintiff as a resulting trust, he having paid the purchase money. Infants have been ordered to convey a resulting trust after it was established by parol testimony; and it has been held by Lord Chancellor *King,* (*ex parte Vernon,* 2 *P. Wms.* 548.) to be a trust within the statute of 7 *Ann,* c. 19. which we have adopted, relative to conveyances by infant trustees. It was, however, afterwards doubted by Lord *Talbot,* in *Goodwyn* v. *Lister,* (3 *P. Wms.* 386.) whether constructive trusts were within the statute of 7 *Ann,* though he gave leave to the plaintiff to apply, in case

418

any precedents could be found where such constructive trusts had ever been held to be within the statute. Lord *Talbot*, in that case, must have either considered a resulting trust not one of the constructive trusts to which he alluded, or he must not have known or recollected the decision of Lord *King*, and which, I think, ought to be considered as an authority. My difficulty is not as to a want of jurisdiction in case a resulting trust be established; but I think that a strict performance of the contract would be just, as it respects the plaintiff, and more beneficial to the infants, and, therefore, it is the more advisable remedy.

I shall, accordingly, decree a sale of the house and lot first mentioned, under the direction of a master; that the sale be at auction, on due public notice, and the terms of it be reduced to writing, and the *memorandum* of it signed by the purchaser, and reported to the Court for its approbation; and that, when confirmed, the conveyance be executed by the infants, by their guardian; that the plaintiff and the master unite in the conveyance; that the moneys be brought into Court to abide its further order; that the same master ascertain and report the amount of the expense of the plaintiff in erecting the house on the last lot, and that the depositions taken in the *cause be used by him as evidence, together with such other and further testimony as the plaintiff may think proper to furnish, and that he report such further testimony, together with his opinion, as to the amount of such expense.

Decree accordingly. (a)

1817.

LIVINGSTON
v.
LIVINGSTON.

[ * 542 ]

(a) It was said, in *Prec. in Ch.* 284., that infant trustees convey by guardian after the conveyance is settled by a master, and in 10 *Vesey*, 554. the whole costs were charged on the party applying to have infant trustees convey.