ELIZABETH MCCLELLAN *et als.*, in equity, *vs.* JOHN R. MC-CLELLAN *et al.*

Somerset, 1872.—April 6, 1876.

*Equity. Trust. Words—some writing. Infants. Dower.*

The change of phraseology in the revision of the statutes from "created and manifested" to "created or declared" wrought a change of the law ; so that under R. S., c. 73, § 11, an express trust need not be created by a writing; it is sufficient that it be subsequently declared by a writing signed by the party charged with the trust.

R. S., c. 73, § 11, provides: There can be no trust concerning lands, except trusts arising or resulting by implication of law, unless created or declared by some writing signed by the party or his attorney. *Held*, 1, that "some writing" means any writing, however informal, from which the existence and terms of the trust can be understood, whether intended by the signer as such or not; that letters, memoranda or other writing of a party, delivered or left by him and found among his papers, are sufficient; 2, also, that where the facts are contained in several writings, one may be signed and the others referred to.

An infant trustee, holding the legal title and having also an interest in the trust estate, is entitled to a day after attaining his majority, to answer.

In a family compact for a division of inheritance constituting one of the heirs (John) a trustee for the purpose, *held*, 1, that the signatures of the *cestuis que trust* were not essential to a declaration of his trusteeship, their assent was sufficient; 2, that John holding the estate in trust and having authority to convert it into money and apply the proceeds to the purposes of the trust, his grantees hold free from the trust, but that having died before the conveyance of the whole, the legal estate of the residue followed by the trust, descended to his son; 3, that, the trust having been declared subsequent to the descent of the property, John's widow could not be deprived of

her right of dower in the undivided portion inherited by her husband; but in all that conveyed to him by his brothers, sisters and nieces, he not having held it otherwise than as trustee, she is not entitled to dower, and she should therefore release her apparent right therein to clear the title; 4, that the infant defendant, holding the legal title as trustee, but also having an interest in the estate, should therefore be decreed to convey the residue of the estate to the new trustee, the decree to be binding on him, unless on being served with a subpœna, he shall, within six months after attaining his majority, show sufficient cause to the contrary; 5, that John's mother, being jointly interested by the terms of the settlement with the heirs and having accepted this interest in lieu of her legal interest, thereby equitably released her legal right and was properly joined as a party to the suit.

BILL IN EQUITY.

On August 20, 1864, Judah McClellan died intestate leaving a widow, seven sons and two daughters, and two granddaughters, children of a deceased sister. The heirs entered into negotiations for dividing the estate without probate administration. A compact of nine articles as a basis of settlement was drawn up, and signed by the widow and eight of the heirs, three not signing, of whom one had authorized the signing, one had signed a copy of eight of the nine articles, and the remaining son John J. McClellan since deceased intestate (March 3, 1865,) was named in article 6, which provides that "all the children shall execute a deed or deeds to John of all their interest in the real estate to enable him to carry out the provisions of the compact, John to give back a document setting forth the purposes for which the deeds are given and obligating himself to carry out the provisions."

All the other heirs, soon after the signing of the compact, gave John a power of attorney to transfer stocks, and quit claimed for nominal consideration their interest in the real estate. John sold the stocks and most of the real estate, declared and paid a dividend of $5,000, to the mother and the same sum to each of the heirs, and died shortly after, leaving these defendants as his widow and heir who was a minor, and leaving as the bill alleges, the trust unexecuted in part to wit: he did not set off to Elizabeth, the widow of Judah, a part of the homestead, did not sell the residue, and did not procure her release of dower. The complainants prayed that the defendants might be adjudged to hold the remaining property in trust for the complainants, be required to convey the same to a new trustee, and for general relief.

It did not appear that John ever gave back the document stipulated in article 6, but many documents and letters were in evidence, some of them dated before and some after the making of the compact, and signed by him, showing his efforts to bring about the compact, and his recognition of it afterwards.

It appeared that John J. McClellan, on August 28th, 1864, wrote to certain brothers residing in New York and other states, announcing the death and befitting burial of their father. In that letter he made a rough estimate of the value of the property together with a proposal for a family settlement, saying among other things the following: "This proposition is satisfactory to all here. . . If it meets your views, it stands as a basis of a peaceful settlement of father's estate. . . Some one of the family must be empowered to settle the estate. As I am here and have no business at present, it is proposed that I should take upon myself this charge. If it be agreeable to you, I am willing to undertake it, and will try to do it in a manner satisfactory to all concerned. We shall use our utmost efforts to make a speedy and peaceful settlement of the estate, and I invoke your assistance in rendering this mark of respect to the memory of our late father. . . Mother expresses her entire satisfaction and acquiescence in the proposed settlement. I shall try to sell the real estate and divide the property within ninety days from date of decease. This was accepted and the 'compact' formally written out and executed as above mentioned."

Several letters written by John J. to his brothers, sisters and nieces, recognizing the "settlement," among them a letter to Edward, of October 27, 1864, in which is the following: "After considerable trouble and a special visit to D., I have obtained the assent of the whole family to the proposed "settlement." After enumerating the pieces of property sold by him and the sums realized, he adds: "I propose to make a dividend of $5,000 on a share."

On Nov. 24, 1864, he wrote again to Edward: "I am ready to divide $5,000 per share on the 20th instant."

On Nov. 29, 1864, again to the same: "On the 21st I distributed $5,000 on a share, as follows: (then follows a detailed statement of the sums in stocks, &c.)

On Nov. 23, 1864, he wrote to the granddaughter Emily San-

born : "You are entitled to receive from your grandfather's estate on the first dividend, $2,500, being one-half of $5,000, on a full share.

"By virtue of the power vested in me, I have assigned to you

| | | | |
|---|---|---|---:|
| 5 shares Northern Bank, Hallowell, $100 each, | | | $500.00 |
| 2 " Augusta " | | 80 | 160.00 |
| 6 " Ticonic " Waterville, | | 75 | 450.00 |
| Sept. 2st, 1864. Cash, Nov. 8th, 1864, | | | 50.00 |
| A. & P. Coburn's note and interest, to Nov. 21, 1864, | | | 1040.29 |
| Cash to balance, | | | 299.71 |
| | | | $2500.00" |

He also made returns to the collector of internal revenue which he signed as "trustee."

*D. D. Stewart,* for the defendants contended that the bill could not be maintained because the compact was not signed by all the parties, because the widow's interest was different from that of the heirs, because no trust was created, and because a decree for conveyance cannot be made against an infant.

*S. Coburn,* for the plaintiffs.

VIRGIN, J. On August 20, 1864, Judah McClellan died intestate, leaving a widow, seven sons and two daughters, and two granddaughters, children of a deceased daughter. Soon afterwards, his son Samuel died, leaving two children.

The widow, seven children and four grandchildren bring this bill against the widow, and sole heir of the remaining son, John J. McClellan, since deceased, intestate, alleging substantially that the complainants and the said John, soon after the decease of said Judah, entered into a family compact as a basis of settlement of the estate of said Judah, by which all except a portion of the homestead was to be sold and the proceeds divided equally among the widow and the ten children, the two granddaughters "together taking their mother's share;" that, in order to carry out the agreement, the other heirs conveyed all their interest to John who was to sell the property and divide the proceeds as above ; that John took the property in trust for the purposes mentioned, sold a part,

made one dividend of $5000 per share and died before fully executing the trust, leaving these defendants as his widow and heir. The complainants pray that the defendants may be adjudged to hold the remaining property in trust for the complainants, be required to convey the same to a new trustee to be appointed, and for general relief.

Did the acts and agreements of the widow and heirs of Judah McClellan create in fact a trust in the property of which he died seized ?

Considering the title as an inheritance, the number of heirs, the release of the whole to John, the acceptance and disposal of it by him, the relations of the parties, together with the purposes and objects in view as evidenced by the distribution of the proceeds we can entertain no doubt of the fiduciary relation between the original parties. But that is not enough.

The law governing the question whether a trust can be established and enforced, is to be found in the statute concerning trusts. This statute was derived (through our mother commonwealth) from the statute of Car. 2, c. 3, § 7, which provided that "all declarations or creations of trust or confidences of any lands, tenements or hereditaments shall be manifested and proved by some writing signed by the party who is by law enabled to declare such trust, or else they shall be void." In *Forster* v. *Hale*, 3 Ves., 696, the master of the rolls construed this section as not requiring that trusts shall be "created" only by a writing; but that they shall be thus "manifested and proved ; " for then the great mischief of parol declarations against which the statute was intended to guard, is entirely taken away. This view was confirmed on appeal, by Lord Ch. Loborough, in the same case in 5 Ves., 308., and the same construction is still maintained by the English courts. *Smith* v. *Matthews*, 3 De G. F. & J., 139, 150.

The Mass. statute of 1783, c. 37, § 3, so far as express trusts are concerned, was a transcript of the English.

The legislature of this state, for some cause, omitted to incorporate this or any similar provision in the statute of 1821, c. 53 ; but the omission was supplied in 1827, by enacting the provision in terms as "an act additional to c. 53." Stat. 1827, c. 358.

In 1837, while this statute was in force, this court said, "a trust need not be created in writing; it is sufficient if it be proved in writing under the hand of the party to be charged." See *U. Soc.* v. *Woodbury*, 14 Maine, 281. Again, in *Evans* v. *Chism*, 18 Maine, 223. "Courts of equity have not considered any of the provisions of the statute of frauds as violated by giving effect to a trust not originally created, but afterward proved or admitted to exist by some written document."

In the revision of 1841, c. 91, § 31, the original section, so far as it related to express trusts, was condensed to the following terms : "All trusts concerning lands . . must be created and manifested by some writing signed," &c. It seems the terms "created and manifested" were considered as working "a most important change in the law"—that trusts must be created by writing; and that it was not sufficient that they were subsequently admitted, acknowledged or declared in writing. *Richardson* v. *Woodbury*, 43 Maine, 206. But in the revision of 1857, c. 73, § 11, the particular phrase mentioned was changed to "created or declared." It is the same in the revision of 1871, c. 73, § 11.

One of the principal designs in revising and codifying the public laws is to condense them so far as practicable—a mere change of phraseology not being deemed a change of the law, unless such was the evident intention of the legislature. *Hughes* v. *Farrar*, 45 Maine, 72. We are of the opinion, however, that the change of the revision of 1841, from "created and manifested" to "created or declared" was more than a mere change of phraseology; and succeeding as it did, the construction given in *Richardson* v. *Woodbury*, we think the marked change of language evinced an intention on the part of the legislature to change the law as there decided; and that such a change was wrought; so that under the existing statute, as under the first, express trusts may be "created" in the first instance, or subsequently "declared" by any proper writing signed as required. In fact they frequently originate in the verbal negotiations of parties ; and whenever they do so arise and are proved by "some writing signed by the party or his attorney," whether it be contemporaneous with, or prior or subsequent

to, the principal transaction, the authorities all concur in declaring the statute complied with in this respect. *Pratt* v. *Thornton*, 28 Maine, 355. *Evans* v. *Chism*, *supra*. *Buck* v. *Swazey*, 35 Maine, 41. *Bragg* v. *Paulk*, 42 Maine, 502. *Montague* v. *Hayes*, 10 Gray, 609. *Baylies* v. *Payson*, 5 Allen, 473. *Urann* v. *Coates*, 109, Mass., 581. *Faxon* v. *Folvey*, 110 Mass., 391. *Kingsbury* v. *Burnside*, 58 Ill., 310. S. C., 11 Am. Rep. 67. *Frost* v. *Frost*, 63 Maine, 399. 1 Perry on Trusts, §§ 81 *et seq.* and notes.

"Some writing" means any writing whatever, however informal, from which the existence of the trust in the estate, and the terms of it can be sufficiently understood, whether it was intended by the signer as such or not. Thus the letters, memoranda, or other writings of a party, delivered or left by him and found among his papers after his decease, have been held sufficient. Ibid.

To be effectual, the "writing" must not only show that there is a trust (*Cowan* v. *Wheeler*, 25 Maine, 267), but also what it is. *Bragg* v. *Paulk*, *supra*. *Smith* v. *Matthews*, *supra*. *Steere* v. *Steere*, 5 Johns. Ch., 1. *Baylies* v. *Payson*, *supra*. In other words, that a trust exists in a particular estate, the nature and objects of it, who the beneficiaries are and what are their respective interests. When these facts are not all contained in one "writing" but are in several, only one of them need be signed, provided the others are so referred to therein as to be deemed altogether parts of one and the same transaction. *Kingsbury* v. *Burnside*, *supra*.

By an application of these principles to the written testimony in this case, the trust, the relation of trustee and *cestuis que trust* between John J. McClellan in his life time, and these complainants and their respective interests, are clearly established. All the other heirs had released their interests to him in accordance with the terms of the proposed family settlement, which were substantially set forth in his letter of August 28, 1864. The compact was drawn and by his procuration signed by the mother and all the heirs save Francis and Emily Sanborn; and Francis had signed all the articles except the seventh, and Emily had, at John's request, authorized him to execute it for her, which he must have considered sufficient, since he proceeded with the execution of his

trust and accounted to her the same as with the others. But neither was her signature nor were those of the other *cestuis que trust* essential to a declaration of his trusteeship. Their assent was all sufficient. The "proposed settlement" was so referred to in John's letters of August 28, and October 27, 1864, (saying in the latter— "After considerable trouble and a special visit to Dexter, I have obtained the assent of the whole family to the proposed settlement,") as to make them all parts of the same. And these, together with his return as "trustee" to the revenue officer, constitute a complete declaration in writing on his part that he held the property, of which his father died seized, as trustee. Moreover, his letters in relation to the dividend, being his own record of the partial execution of his trust, demonstrated that he had the same understanding of it, and that had he lived a short time longer, he would have completed what he had accepted as a "mark of respect to the memory of his late father."

Holding the estate in trust, and having authority to convert it into money and apply the proceeds to the purposes of the trust, his grantees hold free from the trust. But having died before the conveyance of the whole, the legal estate of the residue followed by the trust, descended to his son. *Abbott, pet'r*, 55 Maine, 580, p. 591, and cases.

Moreover, the trust having been declared subsequent to the descent of the property, Lydia R. McClellan, widow of John J., cannot be deprived of her right of dower in the undivided portion inherited by her husband. But in all that conveyed to him by his brothers, sisters and nieces, he never having held it otherwise than as trustee, she is not entitled to dower, and she should, therefore, release her apparent right therein to clear the title.

Can an absolute decree for conveyance be made against the defendant, John R. McClellan ?

On account of his incapacity for defending himself, equity as well as the common law is extremely careful of an infant's rights. The answer filed in his behalf, being that of his guardian rather than of himself, is not binding, and cannot be read against him; but leaves the complainant to prove his allegations. 2 Kent's Com., (12th ed.,) 245 ; 1 Dan. Ch. Pract., (4th Am. ed.,) 169 and notes. By

the old settled rule of practice in chancery, (borrowed in part from the common law,) in cases wherein the real estate of an infant was to be sold or conveyed under a decree of the court, a day (usually six months after attaining majority) was afforded him to show cause against the decree; and for this purpose, he was entitled to be summoned in by subpœna. Ibid. *Coffin* v. *Heath*, 6 Metc., 76. *Whitney* v. *Stearns*, 11 Metc., 319. *Dow* v. *Jewell*, 21 N. H., 470, p. 487. *Mills* v. *Dennis*, 3 Johns. Ch., 367. And the appropriate provision was inserted in the decree. 1 Dan. Ch. Pract., 165 and notes.

The statute of 7 Anne, c. 19, 1, provided "that it shall be lawful for any person under the age of twenty-one, by the direction of the court of chancery or exchequer, by an order made upon hearing all parties on the petition of the person for whom such infant shall be seized or possessed in trust . . . to convey any such lands as the court shall by order direct; and such convey ance shall be good in law." Section 2 provided, "such infants being only trustees . . may be compelled by such order to make such conveyances in like manner as trustees . . of full age."

This statute was considered by Lord Ch. King applicable to resulting trusts; and he ordered a conveyance by infant trustees in two instances at least. *Ex parte Vernon*, 2 P. Wms., 549. S. C., 2 Ab. Cas. in Eq., 520. These decisions were deemed good authority by Ch. Kent, notwithstanding the contrary decision of Lord Ch. Talbot (in *Goodwyn* v. *Lister*, 3 P. Wms., 387,) who did not seem to be aware of the former decisions. *Livingston* v. *Livingston*, 2 Johns. Ch., 541. These decisions, however, lay particular stress upon the language, "such infants being only trustees" in the second section. Thus in *ex parte Vernon*, the Lord Chancellor says, "I am satisfied that is but a trust," &c. And in *Goodwyn* v. *Lister*, "there can be no doubt with regard to express trusts by deed, but that an infant being a mere trustee, may be ordered to convey; and there is no inconvenience in directing an infant to part with an estate which is no benefit to him." Again, in an anonymous case (in 2 Ab. Cas. in Eq., 521,) it is said, "where land is given to an infant, charged with the payment of money, the infant is in equity a trustee for him to whom the

money is payable; but is not within the stat. 7 Anne, c. 19, because he takes an interest in the land; and so it is in all cases where the infant claims an interest." To the same purport are *Hawkins* v. *Obeen*, 2 Ves. Sen., 559; ————— v. *Handcock*, 17 Ves., 383; *ex parte Anderson*, 5 Ves., 240.

In the case at bar, the infant defendant holds the legal title as trustee, but also has an interest in the estate. He should, therefore, be decreed to convey the residue of the estate to the new trustee, the decree to be binding on him, unless on being served with subpœna, he shall within six months after attaining his majority, show sufficient cause to the contrary.

The objection to the parties cannot prevail.

Elizabeth McClellan, widow of Judah McClellan, had a right of dower in the real estate, and was also entitled to one-third of the personal. By the terms of the settlement she became jointly interested with the heirs. This interest was given to her in lieu of her legal interest, and by accepting it she thereby equitably released her legal right. It is essential that she be made a party in order that she may be bound by the decree, and thus save herself from any further trouble or annoyance from others, and the others from her.

Finally, all the parties are interested in the proper management of the remaining trust estate; and to this end, Charles F. McClellan, selected by the parties, is appointed trustee.

The question of costs will be reserved to await the action of the defendant, John R. McClellan, on his being called in on subpœna.

*Bill sustained.*

APPLETON, C. J., DICKERSON, DANFORTH, PETERS and LIBBEY, JJ., concurred.