## KAIAWAHAKENA *vs.* MAKAPUU.

### IN EQUITY. BEFORE JUDD, J.

### FEBRUARY, 1877.

Plaintiff claims a resulting trust in lands, on the ground that he furnished the purchase price and his name was fraudulently omitted from the Royal Patent.

Held, that while there is no resulting trust in favor of a husband, in lands of the wife, paid for with the husband's money; in this case it appears that the wife's name was fraudulently inserted in the Patent, against the will of the husband, and the Court establishes the trust.

### DECISION OF JUDD, J.

This is a bill in equity in which the Court is asked to declare the defendant—as the sole heir-at-law of W. Ka, deceased, the said Ka being the heir-at-law of Helela, the plaintiff's wife—a trustee for the plaintiff of certain tracts of land situate in Pauoa, Honolulu, Oahu, described in Royal Patents Nos. 2589 and 2590.

The allegations on which the bill claims this trust to have resulted is the payment by the plaintiff of the purchase-money,

and also that the names of the grantees, Ka and Helela, were ordered to be placed in the Royal Patents instead of plaintiff's name, by Ka, contrary to the plaintiff's instructions, and in fraud of his rights.

An inspection of the patents shows that the name of Ka has been erased in both patents wherever the names of the grantees occur, but the Book of Government Grants, in which these patents are recorded, shows that the patents were issued in the names of Ka and Helela.

The testimony as to who actually supplied the purchase-money consists mainly of statements of witnesses that heard Helela say at the time of the sale that her husband, the plaintiff, furnished the money ($210), and that she had told Ka to "take this money, pay for the land, and have your father's (plaintiff's) name put into the deeds."

Besides this we have the positive statement of the plaintiff himself that he furnished the purchase-money from his own savings; he also says that Helela told Ka to have the plaintiff's name put in the deeds. Plaintiff says that Helela frequently demanded the deeds of Ka, and that he put her off evasively; that he never saw the deeds until 1868; at this time Ka was in pecuniary difficulties, and he applied to the plaintiff to join with him in signing a mortgage on another piece of land owned by Ka, but on which plaintiff had a house, and plaintiff then demanded these patents; that Makapuu, the defendant, brought them to him, when he discovered for the first time that his name did not appear in them.

Kauahoa says that she received the patents from Ka, and delivered them to Makapuu, and that they read in the names of Ka and Helela, and that no erasure had then been made. It is not clear whether the plaintiff or Ka made the erasure, for Ka, being Helela's own son, she having died in 1867, would inherit from her the whole estate. If he did it, his motive would be a dislike to excite the plaintiff's suspicions on seeing his (Ka's) name appearing on the patent, knowing that his title was not affected by the erasure. On the other hand, if the plaintiff did

it, he may have thought that he was but righting a wrong by removing a name that was there without authority, and he evidently thought, as he afterwards expressed to Mr. Green, that he, and not Ka, was the heir of Helela.

The erasure itself, whichever one made it, would not affect the title, for the Record of the Patents could always be produced to contradict the erasure. I dwell on this in order, if possible, to obtain some light on the question whether Ka fraudulently caused Helela's name to be put in the patents. That he caused his own name to be put in the patents fraudulently I have no doubt. I arrive at this conclusion, not only from the testimony above referred to that the purchase money was supplied by plaintiff, but the other facts which I consider proved, that from the time of the sale the plaintiff took possession of the land, enjoyed its products, had the land assessed to himself, and paid its taxes, and also of Ka's pecuniary inability in 1859 to raise such a sum of money.

The testimony of Kauahoa that plaintiff divided the receipts from this land with Ka, and thus acknowledged Ka's ownership, is unsupported, and it is so inconsistent with the other facts of this case that I cannot believe her.

But why Ka should insert Helela's name as well as his own is not so clear. He had no guarantee that he would survive her, or that she would not devise the land to someone else, and why if he was only willing to commit a fraud for one-half of the land, did he not place the name of the plaintiff in the patents with his own, and not that of Helela?

The doctrine of resulting trusts arises from the natural presumption that he who supplies the money means the purchase to be for his own benefit, rather than for that of another, but it is well settled that where a husband pays for land conveyed to his wife, there is no resulting trust for the husband, the presumption being that it was made for her provision.

In *Whitten vs. Whitten*, 3 Cush., 200, the Court expresses the principle as follows: "The law is clear that there is no result-

ing trust in favor of the husband, from the fact that the lands conveyed to the wife were paid for with the money of the husband."

The mere fact that it was the plaintiff's money that paid for these lands raises no trust in his favor, if he authorized the conveyance to his wife. But the bill alleges "that the plaintiff never authorized the placing of said Ka's or said Helela's name in said deeds. * * * * And that the aforesaid acts of W. Ka were fraudulent and void as against the plaintiff, and contrary to good faith, and in violation of his duty as the plaintiff's agent."

The question remains, was this insertion of Helela's name fraudulent? If so, it will rebut the presumption of a provision for the wife.

If it be true that the plaintiff did authorize the conveyances to be made in his wife's name, then his occupation of the land, his enjoyment of its products, his paying its taxes, etc., were all proper and consistent with his rights as Helela's husband during coverture, and since her death this occupation and exercise of ownership may have been undisturbed, either because the parties thought the plaintiff was Helela's heir, or because Ka may not have cared to molest him. But it may be equally true that the plaintiff relied on the position now taken in the bill that he never intended the deeds to be put in his wife's name, and that it was all a fraud upon him.

The same witnesses who testified about the purchase-money, also testify that Helela instructed Ka to have the plaintiff's name put into the deeds as grantee.

It is contended that this testimony is inadmissible on the ground that a wife is not admissible as a witness in a cause in which her husband is a party. 1 Greenl. on Evid., §334. But this bill is brought against the representative of the heir of Helela, and she being the party in interest, her admissions, being against her interest, are binding upon her heirs.

See Greenl. on Evid., §189.

*Beveridge vs. Minter,* 1 Carr. & Payne, 364.

. I am of opinion, though I am not free from doubt, that the testimony shows that Ka wrongfully and against the intention of the plaintiff had the deeds made in his and his mother Helela's names. This is held to rebut the presumption of a provision for the wife's benefit, and the presumption of a trust would arise for the husband. See 1 Perry on Trusts, §148; *Finch vs. Finch,* 15 Vesey, 43; *Livingston vs. Livingston,* 2 Johns. Ch. 537; *Jackson vs. Matsdorf,* 11 Johns., 91; *Perkins vs. Nicholas,* 11 Allen, 542.

Decree accordingly.

*A. S. Hartwell,* for plaintiff.

*J. M. Davidson,* for defendant.

Honolulu, February 9th, 1877.