MORTIMER HENDRICKS, APPELLANT, *v.* MONTEFIORE ISAACS, AS ADMINISTRATOR, ETC., OF JUSTINA B. HEND-RICKS, DECEASED, RESPONDENT

*Agreement between husband and wife as to moneys advanced by one to the other — when enforced in courts of equity — when parties reside and payments are made in another State the liability of the parties is not affected by the laws of this State.*

The plaintiff's father left a will by which he directed his executors, after the payment of $15,000 per annum to the testator's wife, during her natural life, to pay over and distribute the residue of certain rents, issues, interest and income, during the natural life of his said wife, "to and among my five children, and my daughter-in-law, Justina B. Hendricks (the plaintiff's wife and the defendant's intestate), or such of them that shall be living, and the lawful issue of such of my said five children, and of my said daughter-in-law by her present husband, as shall be dead. * * * It is also my will that whatever moneys may be received by said Justina B. Hendricks, under this clause, are to be by her applied to the maintenance and support of herself, and of the issue by her present husband."

The plaintiff and his wife having disagreed, and he being unwilling to pro-
vide for her support, and that of the family, and the money directed to be
paid to the wife by the will not being immediately available after the decease of
the testator, advances were made by the plaintiff, which were used for the
common benefit of the family, upon written instruments signed by a daughter
of the plaintiff and approved by her mother, acknowledging an advance of a
sum therein named from her father to be repaid from the interest due her mother,
when received by her, arising out of the estate of the testator.

After the decease of the wife a claim was made by the plaintiff to recover the
amount of the advances, from moneys which had passed into the hands of the
defendant as her administrator, which were received under the said provision
of the will. The claim having been rejected by the administrator was, under
the provision of the statute, sent to a referee, who directed the proceedings to be
dismissed.

*Held*, that as the parties resided in New Jersey, and the moneys were advanced and
used there in the family of the plaintiff and intestate, the liability of the intestate
and of her estate, did not depend upon the construction and effect to be given to
the statutes of this State relating to the property and rights of married women.

That, as no statute of the State of New Jersey was proved or read in this proceed-
ing, the right of the plaintiff to maintain it must depend upon the general
principles of equity which have been applied to the solution of controversies
arising between husband and wife.

That while, at the common law, no action could be maintained upon such an
agreement by the husband against the wife, he was entitled, where an agreement
had been entered into between himself and his wife on a fair and just considera-
tion, to seek redress in a court of equity.

That while the reference of a disputed claim is a proceeding, as distinguished from
an action, the same principles apply to its disposition as might be invoked if a
formal action had been brought to secure the redress claimed by the plaintiff.

That the plaintiff was entitled to be indemnified for the moneys so advanced by
him so far as, but no farther than, the money received by her administrator
from the estate of the plaintiff's father might be sufficient for that purpose.

*Moore* v. *Freeman* (Bunbury's Reports, 205); *Cannel* v. *Buckle* (2 P. Wms., 243);
*Livingston* v *Livingston* (2 Johns. Ch., 537) followed.

APPEAL from a judgment, entered on the report of a referee
dismissing the appellant's claim, on a reference under the statute of
a claim against the estate of the defendant's intestate.

*Abram Kling*, for the appellant.

*William Man*, for the respondent.

DANIELS, J. :

The plaintiff was the husband of the deceased intestate. His
father died, leaving an estate of about $1,000,000. No part of the

estate was given to the plaintiff, but the will directed the executor, "after the payment of $15,000 per annum, to my wife Rachel, during her natural life, then to pay over and distribute the residue of such rents, issues, interest and income during the natural life of my said wife to and among my five children, and my daughter-in-law, Justina B. Hendricks, or such of them that shall be living, and the lawful issue of such of my said five children, and of my said daughter-in-law by her present husband, as shall be dead. * * * It is also my will that whatever moneys may be received by said Justina B. Hendricks under this clause, are to be by her applied to the maintenance and support of herself, and of the issue by her present husband." This money directed to be paid to Justina B. Hendricks, the wife of the plaintiff, was not immediately available after the decease of the testator. The plaintiff and his wife disagreed, and he seems to have been unwilling to provide for the support of herself and the family, but he was induced to make advances of money from time to time which were used for the common benefit of the family, besides other moneys which he supplied for that purpose. These moneys were advanced upon written instruments, being six in number. The first was in the following form :

Long Branch, *May* 26, 1884.

Received from father an advance of two hundred dollars to be repaid him from the interest due mother when received by her, arising out of the estate of M. M. Hendricks, deceased, $200.

ROWENA HENDRICKS.

I concur and agree to this.

J. B. Hendricks.

And the other five were of the same tenor and effect. After the decease of the wife moneys passed into the hands of the defendant as her administrator, which were derived under this provision of the will, from the estate of the plaintiff's father. And to recover those moneys, or obtain satisfaction out of them for the moneys mentioned in these instruments, as far as that could be done, was the object of this proceeding. But the referee held adversely to the plaintiff and directed the dismissal of the proceedings.

In giving this direction he acted under the conviction that there was no consideration for either of these instruments, and that they

were inoperative between the plaintiff and his wife. But while it is true that it was the duty of the plaintiff to provide the means for the support and maintenance of his family as far as he had the ability to do that, he had for some undisclosed reason taken a position adverse to the performance of that duty. He and his wife had disagreed, and the result of the disagreement was this disinclination on his part. And it was while the plaintiff and his wife maintained this relation between themselves that he consented to advance the moneys evidenced by these several instruments, provided they should be repaid to him out of the interest which his wife was entitled to under the will of his father. And she assented to the advancement and use of the money on these terms. That was a consideration within the acknowledged legal rule applicable to the case, sufficient to support these instruments as agreements, if she obligated herself in his favor for their performance.

It was clearly the design of the testator that the moneys which she should receive under his will should be applied to the maintenance and support of herself and her issue by the plaintiff. That was the object and the sole object to which the moneys were to be appropriated. But as they were not available at the time for this use, her daughter, with her concurrence and agreement, obtained these several sums of money from the plaintiff by way of anticipation, intending that he should be reimbursed when the moneys should be derived for that purpose under the will of his father. There was a direct appropriation of these moneys to the repayment of the advances. The agreement is express that they were to be repaid from the interest due the intestate when received by her arising out of the estate of M. M. Hendricks, deceased. And while this agreement was made by the daughter, it received the concurrence and additional agreement of the intestate herself, which rendered her as liable for its performance as though she was the only party to the instruments upon which the money was advanced. The referee seems to have acted, as the counsel have been impressed in their argument of the appeal, with the conviction that the liability of the intestate and of her estate, so far as it has received these moneys, depended upon the construction and effect of the statutes of this State relating to the property and rights of married women. But that is a mistaken theory of the case. These parties resided at Long

FIRST DEPARTMENT, OCTOBER TERM, 1887.

Branch, in the State of New Jersey. The moneys were advanced and used there in the family of the plaintiff and the intestate, and the statutes of this State therefore have no application whatever to, or control over, the case. And as no statute of the State of New Jersey has been proved or read in the proceeding, the right of the plaintiff to maintain it must depend upon the general principles of equity which have been applied to the solution of controversies arising between husband and wife. At the common law no action could be maintained upon such an agreement by the husband against the wife, but this rule has not been followed in courts of equity. In those tribunals, where an agreement has been entered into between the husband and the wife on a fair and just consideration he, as well as the wife, has been held entitled to seek redress through the instrumentality or under the principles of a court of equity. And while this is a proceeding as distinguished from an action, the same principles apply to its disposition as might be invoked if a formal action had been brought to secure the redress claimed by the plaintiff. And in such an action under the authorities a recovery may be had in the husband's favor under circumstances of this description. A point quite similar to this was considered in *Moore* v. *Freeman* (Bunbury's R., 205). There the wife separated from the plaintiff, who was her husband, and her father had devised for her benefit by his will, made in the year 1696, £6,000 to trustees to pay both the principal and interest to such person or persons as she should, by deed in writing, subscribed by two or more witnesses appoint, her husband not to intermeddle therewith. nor the same to be subject to his debts. After the making of this will, and while these parties continued to live in a state of separation, the husband obtained the temporary possession of his wife, and they then entered into an agreement that she should be permitted to live separate and apart from him, and that she would settle upon him for his life £200 per annum, and also pay him the sum of £1,000 out of her separate estate. This agreement was reduced to writing and witnessed by four persons, and one payment made upon it. The wife afterwards brought an action to set aside the articles, or in case of a failure to obtain that relief, that the hus-band should make his election to receive £300 per annum. A cross-bill was filed by him to carry the articles into execution. Before the

cause was finally heard and decided she died, and the proceedings were revived against her executor, and the agreement having been found upon an issue, not to have been obtained by duress, its binding validity was sustained by the court, and a decree made in favor of the surviving husband. The executor appealed from this decree to the House of Lords, where it was affirmed with costs. This case is quite similar in its leading features to the controversy presented by this appeal, and it certainly seems to be a direct authority in favor of the plaintiff's right to recover these moneys. In *Cannel* v. *Buckle* (2 P. Wms., 243), a bond had been executed by the wife before her marriage, to her prospective husband, for the conveyance of lands to him in fee. The marriage afterwards took place, but the lands were not conveyed in compliance with the obligation of the bond. A bill was filed by the heir of the husband after his decease, against the heir of the wife, who was also deceased, for the specific performance of the agreement to convey, and it was held to be a good agreement in equity, though void at law, and such a conveyance was decreed by the court. In *Livingston* v. *Livingston* (2 Johns. Ch., 537), the husband agreed with his wife to erect a house on a lot of land to be purchased in her name, the cost of which was to be borne and paid out of the proceeds of another house and lot owned by her. He performed the agreement on his part, but his wife died without disposing of the other house and lot, and he filed his bill against the children to whom the property had descended, for the performance of the agreement. And in the disposition of the case the court, after examining the authorities, decreed a sale of the house and lot, directing the husband to be reimbursed out of the proceeds for the expenditures he had made under the agreement. These authorities fully sustain the validity in equity of an agreement made between the husband and the wife, entitling him to its performance where he is the party to be benefited by its provisions, and support the right of the plaintiff to indemnity for the moneys advanced by him, so far as, but no farther than, those received by her administrator from the estate of his father may be sufficient for that purpose. Instead, therefore, of the proceeding having been dismissed, as it was, the referee should have held the plaintiff entitled to recover. And for the error intervening in the failure to do so, the judgment which has been recovered should be reversed and a

new trial ordered, with costs to abide the event, on which the amount of moneys in the hands of the defendant applicable to these obligations, may be ascertained and appropriated to the payment of the plaintiff's demands.

Van Brunt, P. J., and Bartlett, J., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.